RECEIVED
JAN 15 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| NADINE MAYFIELD | CIVIL ACTION NO. 06-2165 |
| VERSUS | JUDGE DOHERTY |
| CONTINENTAL UNDERWRITERS, LTD., ET AL. | MAGISTRATE JUDGE METHVIN |

### MEMORANDUM RULING

Pending before this Court is a Motion for Partial Summary Judgment filed by defendants Continental Underwriters, Ltd. and Mike Hooks, Inc. [Doc. 23]. Plaintiff, a cook working aboard the dredge MIKE HOOKS on the date of the collision, was injured when the M/V LADY JEANETTE, a power-driven tug owned and operated by third-party defendant Alan D. Alario & Associates, L.L.C. ("Alario"), collided with the dredge MIKE HOOKS, described as a "vessel restricted in her ability to maneuver."[1] In their motion for partial summary judgment, defendants Continental and Mike Hooks argue the M/V LADY JEANETTE violated Rule 18 of the Inland Navigation Rules, 33 U.S.C. §2001, *et seq.*, which requires that a "power-driven vessel underway shall keep out of the way of . . . . a vessel restricted in her ability to maneuver . . . ." See 33 U.S.C. §2018 (Rule 18). Defendants contend the M/V LADY JEANETTE's violation of Rule 18 by failing to avoid the collision with the dredge MIKE HOOKS establishes a presumption of fault and causation on the part of Alario, as owner of the tugboat, under the *Pennsylvania* rule.

---

[1] In her lawsuit, plaintiff has filed claims pursuant to the Jones Act and general maritime law arising out of two separate incidents: (1) the May 31, 2004 collision between the dredge MIKE HOOKS and the tug M/V LADY JEANETTE, and (2) a November 1, 2005 fire in the dredge's engine room; plaintiff alleges she was injured while evacuating the dredge because of the fire. The instant motion for partial summary judgment concerns only the May 31, 2004 collision.

Named for the case in which it was laid down, the *Pennsylvania* rule states a "party that is in violation of a rule intended to prevent allisions is presumed to be at fault and bears the burden of proving that the violation did not cause the allision." See, e.g., *Trico Marine Assets, Inc. v. Diamond B Marine Serv., Inc.*, 332 F.3d 779, 786 (5th Cir. 2003).[2] The rule "allocates the burden of proof, transferring it to the party in violation of a statute or regulation. If that party is to escape liability for the loss, it must prove not just that its violation probably was not, but in fact could not have been a cause of the collision." *Pennzoil Producing Co. v. Offshore Express, Inc.*, 943 F.2d 1465, 1472 (5th Cir. 1991). As the Fifth Circuit stated in *Pennzoil*:

> Although application of the rule imposes a heavy burden of proof, that is all that it does. It does *not* determine a party's ultimate share of liability for a loss. *Otto Candies, Inc. v. M/V MADELINE D*, 721 F.2d 1034, 1036 (5th Cir.1983). Accordingly, this Court has repeatedly held that *The Pennsylvania* rule has survived the Supreme Court's adoption of a comparative fault scheme for maritime matters.

943 F.2d at 1472. Furthermore, it is well-established that the fact that one party violated a statutory duty – and therefore, may be unable to carry its burden to prove that its actions could *not* have been a cause of the accident – does not result in a finding that that party is 100% liable for the loss. The *Pennzoil* court stated:

> The rule of *The Pennsylvania* does not produce such a result. As noted above, the rule merely allocates a burden of proof; it does not fix liability. *If a party fails to carry the burden imposed on it by the rule, the rule does not require that party to bear 100% of the responsibility for the allision. Liability still must be apportioned according to the comparative fault of the parties, as mandated by the Supreme Court's landmark ruling in United States v. Reliable Transfer Co.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975). "The rule of *The Pennsylvania* concerns only the burden of proof for showing causation; it does not determine ultimate liability for damages." *Sheridan I*, 834 F.2d at 478. Accordingly, even if

---

[2] *See The Pennsylvania*, 86 U.S. 125, 22 L.Ed. 148 (1874). It is well-established in the Fifth Circuit that the *Pennsylvania* rule applies in collision cases as well as allision cases. *Trico Marine*, 332 F.3d at 786.

-2-

it was error for the district court to fail to apply *The Pennsylvania* rule to United Gas, the error was harmless, as the district court went on to find that United Gas and Offshore Express were equally responsible for the allision and to apportion damages accordingly. *See Florida E. Coast Ry. Co. v. Revilo Corp.*, 637 F.2d 1060, 1067 (5th Cir. Unit B 1981) (affirming judgment in which trial court found statutory violation and applied *The Pennsylvania* rule, concluding that the violator had not carried its burden and should be held liable for 80% of the damages sustained).

*Id.* at 1472 (emphasis added).

Both plaintiff and third-party defendant Alario respond that invocation of the *Pennsylvania* rule does not entitle Continental and Mike Hooks to summary judgment in their favor, arguing application of the rule merely shifts the burden of proof to the tug to prove its actions could not have been a cause of the collision. Upon the shifting of this burden, both plaintiff and Alario argue the dredge captain owed a number of duties -- including the duty to maintain a proper lookout, to assess whether a risk of collision existed, and to avoid collisions -- which the dredge captain has admitted he did not uphold. Attached to defendants' motion is the affidavit of dredge captain Carroll Kidder, in which Kidder attests he "entered into a passing agreement with an ongoing tugboat and its tow," after which he "maneuvered the dredge . . . . out of the cannel and toward the bank to allow the tug and tow to pass," and that although he allowed the tug "more than sufficient room to make its pass," Kidder also states by the time he realized the collision would occur, "it was too late to maneuver the dredge in any way to avoid the collision and too late to sound any signal or whistle that the collision was going to occur."[3] No explanation is offered for why a vessel maintaining a proper lookout could not have taken evasive action or provided an appropriate warning to the plaintiff. Moreover, no information is provided with respect to the how far the dredge moved after entering the passing

---

[3] See Declaration of Carroll Kidder, ¶¶4-8, attached as exhibit to defendants' motion for partial summary judgment, Doc. 23.

agreement or where it was located at the time of the collision.

Based on the foregoing, both plaintiff and Alario argue there are genuine issues of material fact regarding whether the dredge captain discharged *his* statutory duties, raising genuine issues as to whether the actions of the dredge captain could have been the sole cause of the collision.

Considering the burden of production associated with summary judgment motions, the legal presumptions which attach to evidence produced by a non-movant, and the prohibition against weighing evidence in this context, this Court finds the plaintiff's and third-party defendant Alario's evidence concerning the following alleged facts suffices to demonstrate the existence of genuine issues of material fact regarding the cause of the collision:

- Whether the dredge MIKE HOOKS properly permitted the M/V LADY JEANETTE sufficient room to make its pass.

- Whether the dredge MIKE HOOKS failed to take prompt enough action to allow sufficient room for the safe passage of the M/V LADY JEANETTE.

- Whether the captain of the dredge MIKE HOOKS and his crew were negligent in failing to timely realize that a possibility of a collision with the M/V LADY JEANETTE existed.

- Whether, at the time the captain of the dredge MIKE HOOKS and his crew realized that a collision with the M/V LADY JEANETTE was possible, there was sufficient time for the dredge MIKE HOOKS to maneuver in a way so as to avoid a collision.

- Whether the captain of the dredge MIKE HOOKS and his crew had sufficient warning of a possible collision with the M/V LADY JEANETTE that would have allowed the dredge MIKE HOOKS to maneuver in a way so as to avoid a collision.

- Whether the dredge MIKE HOOKS caused the collision with the M/V LADY JEANETTE, and whether the captain of the dredge MIKE HOOKS could have avoided the collision.

- Whether Mike Hooks, Inc. or any member of the crew of the dredge MIKE HOOKS was negligent on May 31, 2004 and whether their negligence caused or contributed to its collision with the M/V LADY JEANETTE on May 31, 2004.

- Whether Mike Hooks, Inc. caused or contributed to the alleged accident and injuries complained of by Nadine Mayfield alleged to have occurred as a result of the collision between the dredge MIKE HOOKS and the M/V LADY JEANETTE.

- Whether the dredge MIKE HOOKS had an appropriate crew member assigned to act as a look-out, as required by Inland Navigational Rule 5, 33 U.S.C. § 2005.

- Whether the captain of the dredge MIKE HOOKS was attempting to function as the vessel's look-out.

- Whether the dredge MIKE HOOKS failed to use all available means appropriate to the prevailing circumstances and conditions to determine if a risk of collision existed, as required by Inland Navigational Rule 7, 33 U.S.C. §2007.

- Whether the captain of the dredge MIKE HOOKS had the capability to move the dredge by means of wenches controlled from the wheelhouse of the dredge.

- Whether the dredge MIKE HOOKS could have avoided a collision with the M/V LADY JEANETTE by maneuvering its wenches and anchor once the possibility of collision became apparent.

- Whether the dredge MIKE HOOKS was negligent and/or unseaworthy for failing to take evasive action through the use of its wenches and anchor once the possibility of collision with the M/V LADY JEANETTE became apparent.

Significantly, this Court finds that, pursuant to established law, even if this Court concludes the M/V LADY JEANETTE was at fault in causing the collision, such finding would not preclude a conclusion that the dredge MIKE HOOKS was also negligent. Under such a scenario, liability must be apportioned according to the comparative fault of the parties.

For the foregoing reasons, the defendant's Motion for Partial Summary Judgment shall be denied in its entirety.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 15 day of January, 2008.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE